UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DURONE JAMAL SANDERS

    Plaintiff,

v.

                                Case No: 4:15-cv-10726
                                Honorable Linda V. Parker

OAKLAND COUNTY,
SHERIFF MICHAEL J. BOUCHARD,
and DETECTIVE MARK FERGUSON,

    Defendants.
_____

**<u>OPINION AND ORDER (1) GRANTING DEFENDANTS OAKLAND COUNTY AND SHERIFF MICHAEL J. BOUCHARD'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 47); (2) GRANTING PLAINTIFF'S EX PARTE MOTION FOR ADDITIONAL TIME TO RESPOND (ECF NO. 66) AND (3) DENYING AS MOOT DEFENDANTS' MOTION TO STRIKE (ECF NO. 65)</u>**

    This is a civil action under 42 U.S.C. § 1983 arising from incidents involving Plaintiff Durone Jamal Sanders ("Plaintiff") and Defendants Oakland County, Sheriff Michael J. Bouchard ("Defendant Bouchard"), and Detective Mark Ferguson ("Defendant Ferguson") (collectively "Defendants"). Plaintiff is seeking monetary damages based on violations of his Fourth, Fifth, and Fourteenth Amendment rights under the United States Constitution and corresponding

1

provisions of the Michigan Constitution, including false arrest, imprisonment, and malicious prosecution. (ECF No. 1.)

Plaintiff has alleged that Defendant Bouchard has violated his civil rights pursuant to 42 U.S.C. § 1983 by conspiring with Defendant Ferguson to deprive Plaintiff of his Fourth, Fifth, and Fourteenth Amendments rights through false arrest, imprisonment, and malicious prosecution. (Compl. ¶ 38.) Plaintiff also contends that Defendant Bouchard is liable in his role as a supervisor to Defendant Ferguson for the alleged constitutional violations. (*Id.* ¶¶ 50-63.) Plaintiff argues that Defendant Oakland County violated his civil rights under a theory of municipal liability, alleging that the county had a custom or practice of tolerating the violations of constitutional rights by their deputy sheriffs. (Id. ¶¶ 42-49.)

Presently before the Court is Defendants Oakland County and Sheriff Michael J. Bouchard's motion for summary judgment, filed pursuant to Federal Rules of Civil Procedure 56 on July 28, 2016. (ECF No. 47.) Plaintiff filed an untimely response on September 15, 2016. (ECF No. 62.)[1] The motion has been fully briefed. The Court finds the legal arguments adequately presented in the parties' papers such that the decision-making process would not be significantly aided by oral argument. Therefore, the Court is dispensing with oral argument with respect

---

[1] Defendants subsequently filed a motion to strike Plaintiff's response to the motion for summary judgment. (ECF No. 65.) Because the Court has found that Plaintiff's claims cannot survive the summary judgment stage, the Court will deny Defendants' motion to strike as moot.

to the motions pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). For the reasons that follow, the Court is granting Defendants' motion.

## I. Factual and Procedural Background

Defendant Ferguson was a detective and deputy sheriff for the Oakland County Sheriff's Department. (ECF No. 46 at Pg ID 267.) He was also a member of the Oakland County Narcotics Enforcement Team ("NET"). (*Id.*). As an officer of NET, Defendant Ferguson was responsible for drug investigations, which included finding confidential informants and overseeing drug buys, arrests, or executions of search warrants stemming from the work of the confidential informant. (ECF No. 46-4 at Pg ID 402.) When an officer's confidential informant was involved in an investigation, the officer was deemed the "officer in charge" and responsible for preparing the NET Case Report. (*Id.*)

A man with the street name "Flip" was the subject of one of Defendant Ferguson's investigations. (ECF No. 46 at Pg ID 268.) Through the use of two confidential informants, Defendant Ferguson identified Plaintiff as "Flip".[2] (*Id.*) The first interaction between a confidential informant and Flip occurred on March 6, 2012,[3] when a controlled buy of cocaine occurred. (ECF No. 60 at Pg ID 896.)

---

[2] Plaintiff has denied being Flip by testifying that "he did not sell drugs to anyone, ever, and he certainly did not sell drugs to anyone in 2012." (ECF No. 60 at Pg ID 915.)
[3] Plaintiff's opposition brief states the first controlled buy occurred on March 6, 2012 (ECF No. 60 at Pg ID 896), while Defendant Ferguson's initial brief states

Confidential Informant 1 ("CI 1") notified Defendant Ferguson that he would be driving Flip to Detroit to purchase drugs. (ECF No. 46 at Pg ID 269.) Defendant Ferguson alleges that he followed the vehicle along with other officers, including Officer Doty and Sgt. Jennings. (*Id.*)

On March 8, 2012—two days later—Defendant Ferguson and Officers Richter, Bearer, Miles, Loken, and Pankey stopped a van driven by CI #1 on I-75. (ECF No. 46-6 at Pg ID 419-21; *see also* ECF Nos. 46 at Pg ID 269-70; 60 at Pg ID 898.) Plaintiff was a rear seat passenger in the van. (ECF No. 60 at Pg ID 898.) Defendant Ferguson alleges the reason for the stop stemmed from a conversation with CI #1, who alerted Defendant that "he would be driving Flip to Detroit to purchase more drugs[.]" (ECF No. 46 at Pg ID 269.) Defendant Ferguson, along with his fellow officers, followed the van from Pontiac to Detroit and back again. (*Id.*) CI #1's van was equipped with a recording device that allowed the officers to remotely monitor the conversation. (*Id.*) During his deposition, Defendant Ferguson testified that he called CI #1 on his cell phone during this surveillance and also received confirmation that the drugs had been obtained. (*Id.*)

When the vehicle was stopped, Plaintiff and the remaining occupants exited the vehicle where they were subjected to a pat down, handcuffed, and detained for

---

the controlled buy occurred on March 8, 2016 (ECF No. 46 at Pg ID 269.) The disagreement over the dates is immaterial.

40 minutes while the officers searched the vehicle. (*Id.* at Pg ID 270.) No drugs were found on Plaintiff. (*Id.*) This incident was summarized in Defendant Ferguson's case report. (ECF No. 46-6 at Pg ID 421-22.)

A second controlled buy occurred on July 31, 2012. Confidential Informant #2 ("CI #2") was observed entering a home to meet with Flip to purchase 1.0 grams of heroin. (ECF No. 46 at Pg ID 270-71.) Defendant Ferguson, Officer Richter, and CI #2 all recalled this controlled buy. (*Id.* at Pg ID 271.)

That same day, Defendant Ferguson returned to his office to prepare a search warrant for the home that the second controlled buy occurred in, 18 Jefferson. (*Id.* at Pg ID 272.) Defendant Ferguson took the search warrant and affidavit in support of the warrant to the 50th District Court in Pontiac, Michigan, where it was authorized by Judge Preston G. Thomas. (*Id.*) Plaintiff alleges he only received one page of the warrant, and never received the affidavit in support of the warrant.[4] (ECF No. 60 at Pg ID 901.) Defendant Ferguson alleges he has not seen the affidavit since the date of the search, July 31, 2012. (ECF No. 46 at Pg ID 272.)

After obtaining authorization for the warrant, the following members of NET executed the search warrant at Plaintiff's home: Defendant Ferguson, Officers Pankey, Bearer, Richter, and Sgt. Jennings. (*Id.* at Pg ID 273.) Officers

---

[4] Plaintiff alleges they have attempted numerous times to obtain the original executed warrant through discovery requests and subpoenas without any results. (ECF No. 60 at Pg ID 902.) Plaintiff has not filed a motion to compel with this Court.

5

found a joint of marijuana, 1.4 grams, during the search along with $334 in cash. (*Id.*; *see also* ECF No. 60 at Pg ID 901.) Both items were seized.[5] (*Id.*) Plaintiff alleges that officers were responsible for "considerable damage to the home, damaging Plaintiff's personal property as well as the front door of the home, which required repairs." (ECF No. 60 at Pg ID 901.)

On August 29, 2012, a third controlled buy occurred with CI #2. (ECF No. 46 at Pg ID 274.) Defendant Ferguson and Officer Pankey observed CI #2 enter Plaintiff's vehicle to purchase 0.2 grams of crack cocaine. (*Id.*) The officers observed Plaintiff drive around with CI #2 in the car. (*Id.*) Defendant Ferguson prepared a case report and logged to the cocaine into the NET property room. (*Id.*)

The next controlled buy occurred on September 5th, where CI #2 purchased 0.2 grams of heroin at the back door of Plaintiff's home at 18 Jefferson. (*Id.*) Defendant Ferguson, Officer Pankey, and Officer Richter observed this control buy. (*Id.*)

Defendant Ferguson and CI #2 attempted to arrange another controlled buy the next day. (ECF No. 46 at Pg ID 275.) According to Defendants, CI #2 called Plaintiff while the informant was with Defendant Ferguson to arrange a meeting location. (*Id.*) Plaintiff suggested another meeting location, and CI #2 met him there shortly. (*Id.*) After getting into his truck, Plaintiff drove around for "at least

---

[5] According to Defendant Ferguson, there is no evidence that Plaintiff attempted to contest seizure. (ECF No. 46 at Pg ID 273.)

6

an hour without any drugs being delivered." (*Id.*) Due to concern for the informant's safety, the officers decided to arrest Plaintiff based on his prior drug sales. (*Id.*) During booking, Officer Bell found 2.2 grams of marijuana in Plaintiff's left sock. (*Id.*) Defendant Ferguson stated that he was not present for the stop, arrest, or booking but recalls Officer Bell delivering the marijuana to him afterward. (*Id.*)

Plaintiff disputes that he was meeting with an individual for a drug deal. Rather, Plaintiff contends he was on his way home to pick up a grocery list and go shopping when he was pulled over by the officers. (ECF No. 60 at Pg ID 903.) Plaintiff testified during his deposition that he "did not sell drugs to anyone at any time during the year 2012." (*Id.* at Pg ID 904.)

Plaintiff was incarcerated as a pretrial detainee while he awaited a hearing in the 50th District Court to the Oakland County Circuit Court. (ECF No. 46 at Pg ID 276.) Plaintiff was charged with 3 violations of the Michigan Controlled Substance Act, Mich. Comp. Laws § 333.7401(2)(a)(iv) for the delivery of cocaine on August 29th, delivery of heroin on September 5th, and misdemeanor possession of marijuana during his September 6th arrest.. (*Id.*) On September 8th, Plaintiff was also charged with misdemeanor possession of marijuana in violation of Mich. Comp. Laws § 333.7403(2)(d) for the marijuana found during the search of his home on July 31, 2012.

Defendant Ferguson was terminated by the Oakland County Sheriff's Department in December 2012 for violating public policy. (*Id.*) In particular, Defendant Ferguson was alleged to have given false testimony in a separate case. (*Id.*) As a result, the prosecutor chose to discontinue prosecutions in 16 to 19 cases where Defendant Ferguson was considered a necessary witness, including Plaintiff's pending cases in circuit court arising out of his August and September controlled buys along with his marijuana possession at the time of his arrest. (*Id.* at Pg ID 277.)

However, Plaintiff's district court marijuana possession case for the marijuana found during the search of his home was not dismissed. (*Id.*) Plaintiff pled guilty to possession of marijuana for the July 31st search of his home. (*Id.*) That conviction has not been challenged on appeal, reversed, expunged by executive order, or called into question. (*Id.*)

Plaintiff filed this action alleging that Defendants have violated his civil rights, seeking damages pursuant to 42 U.S.C. §§ 1983 and 1988. (ECF No. 1.) In particular, Plaintiff alleges that Defendant Ferguson lacked probable cause to search Plaintiff's home on July 31, 2012 and to arrest Plaintiff on September 6, 2012. (ECF No. 60 at Pg ID 919.) Plaintiff also alleges that Defendant Ferguson lacked the necessary reasonable suspicion before stopping his car on I-75 in March 2012. (*Id.*) Plaintiff alleges that based on Defendant Ferguson's "established

8

history of submit[ing] perjured testimony" to courts, it is likely that he did so in this matter as well. (*Id.* at Pg ID 892.)

Plaintiff asserts that Defendants Bouchard and Oakland County are liable because of Defendant Ferguson's actions. Plaintiff alleges that Defendant Oakland County was aware that Defendant Ferguson was a "known perjurer" and yet the County "failed to investigate these other cases to determine whether the alleged incidents, arrests, incarcerations, and sometimes even convictions, were true, accurate, and lawful." (ECF No. 62 at Pg ID 1085.)

Plaintiff argues that Defendant Bouchard "further concealed and covered up Ferguson's actions by destroying *all* of the physical evidence associated with Ferguson's investigations of Plaintiff Sanders[.]" (*Id.* at Pg ID 1086.) This destruction of evidence, according to Plaintiff, shows that the County "actually tolerated" Defendant Ferguson's alleged unconstitutional activities.[6] (*Id.*)

This Court found, in an Opinion and Order entered on this date, that Defendant Ferguson did not violate Plaintiff's constitutional rights in this matter. The remaining claims in this case, therefore, pertain to supervisory liability and municipal liability against Defendants Bouchard and Oakland County respectively.

## II. Summary Judgment Standard

---

[6] Plaintiff alleges that the County "actually tolerated" Defendant Ferguson's alleged unconstitutional actions, despite the County's (1) termination of Defendant Ferguson in December 2012 and (2) the dismissal of all cases where Defendant Ferguson was a necessary witness. (ECF No. 46 at Pg ID 276-77.)

9

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion,

"including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

## III. Applicable Law and Analysis

### A. Supervisory Liability

In his opposition brief to this motion, Plaintiff states that "Sheriff Bouchard had the responsibility of supervising Defendant Ferguson and the members of the [Oakland County NET crew] that became involved in the 'Flip' investigation." (ECF No. 62 at Pg ID 1097.) Plaintiff contends that Defendant Bouchard's failure to supervise led to the alleged unconstitutional conduct against Plaintiff.

The Sixth Circuit "has held that § 1983 liability must be based on more than respondeat superior, or the right to control employees." *Shehee v. Luttrell*, 199 F.3d 295, 300 (1999). Supervisory liability attaches only where

> the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Id*. (quoting *Hays v. Jefferson Cnty.*, 668 F.2d 869, 874 (6th Cir. 1982)). Where a supervisor also is a policymaker, care must be taken to distinguish an individual-

11

capacity claim against the supervisor and an official-capacity or municipal claim, as they turn on two different legal principles. *See Essex v. Cnty. of Livingston*, 518 F. App'x 351, 355 (6th Cir. 2013).

In *Essex*, the court explained the distinction between these two legal principles:

> For individual liability on a failure-to-train or supervise theory, the defendant supervisor must be found to have " 'encouraged *the specific* incident of misconduct or in some other way directly participated in it.' " *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). A plaintiff must demonstrate that the defendant supervisor " 'at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.' " *Id.* (quoting *Shehee*, 199 F.3d at 300). A mere failure to act will not suffice to establish supervisory liability. *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006).

*Essex*, 518 F. App'x at 355 (emphasis added). In contrast, an official capacity or municipal claim

> is a broader claim concerning the custom or policy of a municipality, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978), and thus would implicate the conduct of a defendant supervisor insofar as he acted with deliberate indifference in his official capacity as a policymaker. *See Phillips*, 534 F.3d at 543; *Campbell v. City of Springboro*, 700 F.3d 779, 794 (6th Cir. 2012). Such claims do not require direct participation in or encouragement of the specific acts; rather, these claims may be premised on a failure to act. *See Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012). A plaintiff must establish that the municipality, through its policymakers, failed to train or supervise employees despite: 1) having actual or constructive knowledge of a pattern of similar constitutional violations by untrained employees, *see Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407-08, 117 S. Ct. 1382, 137

> L.Ed.2d 626 (1997); or 2) the fact that the constitutional violation alleged was a patently obvious and "highly predictable consequence" of inadequate training, *id*. at 409, 117 S. Ct. 1382 (discussing *City of Canton v. Harris*, 489 U.S. 378, 390 n. 10, 109 S. Ct. 1197, 103 L.Ed.2d 412 (1989)).

*Essex*, 518 F. App'x at 355-56.

Plaintiff's claim against Defendant Bouchard fails because this Court has found that Plaintiff's constitutional rights were not violated by Defendant Ferguson in its motion granting summary judgment in Defendant Ferguson's favor. In its decision, this Court found that there was no genuine issue of material fact as to whether Defendant Ferguson had reasonable suspicion and probable cause to stop and search Plaintiff and his home on three separate occasions. Therefore, this Court cannot find that Defendant Bouchard encouraged or directly participated in unconstitutional conduct against Plaintiff where no unconstitutional conduct occurred.

### B. Municipal Liability

Plaintiff claims that Defendant Oakland County is liable for Defendant Ferguson's alleged violations of his constitutional rights. A municipal entity such as the county "cannot be held liable solely because it employs a tortfeasor-- or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Rather,

13

a municipality may be held liable only for those acts which may fairly be said to be its own. *Id*. at 694.

To hold Oakland County liable under § 1983, Plaintiff "must show that the county's policy (or lack thereof) was a 'moving force' in the deprivation of [his] rights and arose from 'deliberate indifference' to [his] rights." *Carey v. Helton*, 70 F. App'x 291, 293 (6th Cir. 2003) (citing *Doe v. Claiborne Cnty., Tenn.*, 103 F.3d 495, 508 (1996)); *see also City of Canton v. Harris*, 489 U.S. 378, 388 (1989) (holding that "the inadequacy of police training may serve as the basis for § 1983 liability," but "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."). Specifically, Plaintiff must prove: "that a training program is inadequate to the tasks that the officers must perform; that the inadequacy is the result of the city's deliberate indifference; and that the inadequacy is 'closely related to' or 'actually caused' the plaintiff's injury." *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989) (quoting *Harris*, 489 U.S. at 391). "Liability cannot be imposed unless 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy makers of the [governmental body] can reasonably be said to have been deliberately indifferent to the need.'" *Id*. (quoting *Harris*, 489 U.S. at 390) (brackets added in *Hill*).

Other than the bare and conclusory assertions in his Complaint (*see* Compl. ¶¶ 42-49), Plaintiff never identifies a policy or custom of the County that he claims caused the alleged constitutional violations in this case. In his response brief, he refers vaguely to the County's failure to investigate Defendant Ferguson's actions on the other 17 to 25 cases that were later dismissed. (ECF No. 62 at Pg ID 1094.) Plaintiff also alleges that Defendants Bouchard and Oakland County destroyed all physical evidence pertaining to those cases but he does not refer to any specific evidence with respect to this County or these officers. (*Id.*) He does not cite to any prior instances of misconduct or allege that the County has ignored a history of abuse. Plaintiff's allegations are insufficient to survive a motion to dismiss, *see Anthony v. Roberson*, 26 F. App'x 419, 422 (6th Cir. 2001) (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir.1987) (indicating "that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983)), much less Defendants' motion for summary judgment.

Furthermore, Plaintiff is unable to show that Defendant Oakland County's policy was the "moving force" in the deprivation of his rights because this Court has found that the facts do not show any unconstitutional conduct against Plaintiff in its opinion and order granting summary judgment in favor of Defendant Ferguson.

15

## IV. Conclusion

For the reasons stated, the Court concludes that Defendants Bouchard and Oakland County have demonstrated that there is no genuine issue of material fact precluding summary judgment.

Accordingly,

**IT IS ORDERED** that Defendants' motion for summary judgment (ECF No. 47) is **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's ex parte motion for additional time to respond to Defendants' summary judgment motion (ECF No. 66) is **GRANTED**;

**IT IS FURTHER ORDERED** that Defendants' motion to strike (ECF No. 65) is **DENIED AS MOOT.**

s/ Linda V. Parker<br>
LINDA V. PARKER<br>
U.S. DISTRICT JUDGE

Dated: March 29, 2017

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, March 29, 2017, by electronic and/or U.S. First Class mail.

s/ Richard Loury<br>
Case Manager