UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DURONE JAMAL SANDERS

    Plaintiff,

v.

                      Case No: 4:15-cv-10726
                      Honorable Linda V. Parker

OAKLAND COUNTY,
SHERIFF MICHAEL J. BOUCHARD,
and DETECTIVE MARK FERGUSON,

    Defendants.
_____

**OPINION AND ORDER GRANTING DEFENDANT FERGUSON'S MOTION FOR SUMMARY JUDGMENT AND/OR DISMISSAL (ECF NO. 46)**

      This is a civil action under 42 U.S.C. § 1983 arising from incidents involving Plaintiff Durone Jamal Sanders ("Plaintiff") and Defendants Oakland County, Sheriff Michael J. Bouchard ("Defendant Bouchard"), and Detective Mark Ferguson ("Defendant Ferguson") (collectively "Defendants"). Plaintiff is seeking monetary damages based on violations of his Fourth, Fifth, and Fourteenth Amendment rights under the United States Constitution and corresponding provisions of the Michigan Constitution, including false arrest, imprisonment, and malicious prosecution. (ECF No. 1.)

1

Presently before the Court is Defendant Ferguson's motion for summary judgment and/or dismissal, filed pursuant to Federal Rules of Civil Procedure 56 and 12(b)(6) on July 27, 2016. (ECF No. 46.) The motion has been fully briefed. The Court finds the legal arguments adequately presented in the parties' papers such that the decision-making process would not be significantly aided by oral argument. Therefore, the Court is dispensing with oral argument with respect to the motions pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). For the reasons that follow, the Court is granting Defendant Ferguson's motion.

I. **Factual and Procedural Background**

Defendant Ferguson was a detective and deputy sheriff for the Oakland County Sheriff's Department. (ECF No. 46 at Pg ID 267.) He was also a member of the Oakland County Narcotics Enforcement Team ("NET"). (*Id.*). As an officer of NET, Defendant Ferguson was responsible for drug investigations, which included finding confidential informants and overseeing drug buys, arrests, or executions of search warrants stemming from the work of the confidential informant. (ECF No. 46-4 at Pg ID 402.) When an officer's confidential informant was involved in an investigation, the officer was deemed the "officer in charge" and responsible for preparing the NET Case Report. (*Id.*)

A man with the street name "Flip" was the subject of one of Defendant Ferguson's investigations. (ECF No. 46 at Pg ID 268.) Through the use of two

confidential informants, Defendant Ferguson identified Plaintiff as "Flip".[1] (*Id.*) The first interaction between a confidential informant and Flip occurred on March 6, 2012,[2] when a controlled buy of cocaine occurred. (ECF No. 60 at Pg ID 896.) Confidential Informant 1 ("CI 1") notified Defendant Ferguson that he would be driving Flip to Detroit to purchase drugs. (ECF No. 46 at Pg ID 269.) Defendant Ferguson alleges that he followed the vehicle along with other officers, including Officer Doty and Sgt. Jennings. (*Id.*)

On March 8, 2012—two days later—Defendant Ferguson and Officers Richter, Bearer, Miles, Loken, and Pankey stopped a van driven by CI #1 on I-75. (ECF No. 46-6 at Pg ID 419-21; *see also* ECF Nos. 46 at Pg ID 269-70; 60 at Pg ID 898.) Plaintiff was a rear seat passenger in the van. (ECF No. 60 at Pg ID 898.) Defendant Ferguson alleges the reason for the stop stemmed from a conversation with CI #1, who alerted Defendant that "he would be driving Flip to Detroit to purchase more drugs[.]" (ECF No. 46 at Pg ID 269.) Defendant Ferguson, along with his fellow officers, followed the van from Pontiac to Detroit and back again. (*Id.*) CI #1's van was equipped with a recording device that

---

[1] Plaintiff has denied being Flip by testifying that "he did not sell drugs to anyone, ever, and he certainly did not sell drugs to anyone in 2012." (ECF No. 60 at Pg ID 915.)

[2] Plaintiff's opposition brief states the first controlled buy occurred on March 6, 2012 (ECF No. 60 at Pg ID 896), while Defendant Ferguson's initial brief states the controlled buy occurred on March 8, 2016 (ECF No. 46 at Pg ID 269.) The disagreement over the dates is immaterial.

allowed the officers to remotely monitor the conversation. (*Id.*) During his deposition, Defendant Ferguson testified that he called CI #1 on his cell phone during this surveillance and also received confirmation that the drugs had been obtained. (*Id.*) When the vehicle was stopped, Plaintiff and the remaining occupants exited the vehicle where they were subjected to a pat down, handcuffed, and detained for 40 minutes while the officers searched the vehicle. (*Id.* at Pg ID 270.) No drugs were found on Plaintiff. (*Id.*) This incident was summarized in Defendant Ferguson's case report. (ECF No. 46-6 at Pg ID 421-22.) Defendant Ferguson's recollection of events is corroborated by the deposition testimony of CI #1.

A second controlled buy occurred on July 31, 2012. Confidential Informant #2 ("CI #2") was observed entering a home to meet with Flip to purchase 1.0 grams of heroin. (ECF No. 46 at Pg ID 270-71.) Defendant Ferguson, Officer Richter, and CI #2 all recalled this controlled buy. (*Id.* at Pg ID 271.)

That same day, Defendant Ferguson returned to his office to prepare a search warrant for the home that the second controlled buy occurred in, 18 Jefferson. (*Id.* at Pg ID 272.) Defendant Ferguson took the search warrant and affidavit in support of the warrant to the 50th District Court in Pontiac, Michigan, where it was authorized by Judge Preston G. Thomas. (*Id.*) Plaintiff alleges he only received

4

one page of the warrant, and never received the affidavit in support of the warrant.[3] (ECF No. 60 at Pg ID 901.) Defendant Ferguson alleges he has not seen the affidavit since the date of the search, July 31, 2012. (ECF No. 46 at Pg ID 272.)

After obtaining authorization for the warrant, the following members of NET executed the search warrant at Plaintiff's home: Defendant Ferguson, Officers Pankey, Bearer, Richter, and Sgt. Jennings. (*Id.* at Pg ID 273.) Officers found a joint of marijuana, 1.4 grams, during the search along with $334 in cash. (*Id.*; *see also* ECF No. 60 at Pg ID 901.) Both items were seized.[4] (*Id.*) Plaintiff alleges that officers were responsible for "considerable damage to the home, damaging Plaintiff's personal property as well as the front door of the home, which required repairs." (ECF No. 60 at Pg ID 901.)

On August 29, 2012, a third controlled buy occurred with CI #2. (ECF No. 46 at Pg ID 274.) Defendant Ferguson and Officer Pankey observed CI #2 enter Plaintiff's vehicle to purchase 0.2 grams of crack cocaine. (*Id.*) The officers observed Plaintiff drive around with CI #2 in the car. (*Id.*) Defendant Ferguson prepared a case report and logged to the cocaine into the NET property room. (*Id.*)

---

[3] Plaintiff alleges they have attempted numerous times to obtain the original executed warrant through discovery requests and subpoenas without any results. (ECF No. 60 at Pg ID 902.) Plaintiff has not filed a motion to compel with this Court.
[4] According to Defendant Ferguson, there is no evidence that Plaintiff attempted to contest seizure. (ECF No. 46 at Pg ID 273.)

The next controlled buy occurred on September 5th, where CI #2 purchased 0.2 grams of heroin at the back door of Plaintiff's home at 18 Jefferson. (*Id.*) Defendant Ferguson, Officer Pankey, and Officer Richter observed this control buy. (*Id.*)

Defendant Ferguson and CI #2 attempted to arrange another controlled buy the next day. (ECF No. 46 at Pg ID 275.) According to Defendants, CI #2 called Plaintiff while the informant was with Defendant Ferguson to arrange a meeting location. (*Id.*) Plaintiff suggested another meeting location, and CI #2 met him there shortly. (*Id.*) After getting into his truck, Plaintiff drove around for "at least an hour without any drugs being delivered." (*Id.*) Due to concern for the informant's safety, the officers decided to arrest Plaintiff based on his prior drug sales. (*Id.*) During booking, Officer Bell found 2.2 grams of marijuana in Plaintiff's left sock. (*Id.*) Defendant Ferguson stated that he was not present for the stop, arrest, or booking but recalls Officer Bell delivering the marijuana to him afterward. (*Id.*)

Plaintiff disputes that he was meeting with an individual for a drug deal. Rather, Plaintiff contends he was on his way home to pick up a grocery list and go shopping when he was pulled over by the officers. (ECF No. 60 at Pg ID 903.) Plaintiff testified during his deposition that he "did not sell drugs to anyone at any time during the year 2012." (*Id.* at Pg ID 904.)

6

Plaintiff was incarcerated as a pretrial detainee while he awaited a hearing in the 50th District Court to the Oakland County Circuit Court. (ECF No. 46 at Pg ID 276.) Plaintiff was charged with 3 violations of the Michigan Controlled Substance Act, Mich. Comp. Laws § 333.7401(2)(a)(iv) for the delivery of cocaine on August 29th, delivery of heroin on September 5th, and misdemeanor possession of marijuana during his September 6th arrest.. (*Id.*) On September 8th, Plaintiff was also charged with misdemeanor possession of marijuana in violation of Mich. Comp. Laws § 333.7403(2)(d) for the marijuana found during the search of his home on July 31, 2012.

Defendant Ferguson was terminated by the Oakland County Sheriff's Department in December 2012 for violating public policy. (*Id.*) In particular, Defendant Ferguson was alleged to have given false testimony in a separate case. (*Id.*) As a result, the prosecutor chose to discontinue prosecutions in 16 to 19 cases where Defendant Ferguson was considered a necessary witness, including Plaintiff's pending cases in circuit court arising out of his August and September controlled buys along with his marijuana possession at the time of his arrest. (*Id.* at Pg ID 277.)

However, Plaintiff's district court marijuana possession case for the marijuana found during the search of his home was not dismissed. (*Id.*) Plaintiff pled guilty to possession of marijuana for the July 31st search of his home. (*Id.*)

7

That conviction has not been challenged on appeal, reversed, expunged by executive order, or called into question. (*Id.*)

Plaintiff filed this action alleging that Defendants have violated his civil rights, seeking damages pursuant to 42 U.S.C. §§ 1983 and 1988. (ECF No. 1.) In particular, Plaintiff alleges that Defendant Ferguson lacked probable cause to search Plaintiff's home on July 31, 2012 and to arrest Plaintiff on September 6, 2012. (ECF No. 60 at Pg ID 919.) Plaintiff also alleges that Defendant Ferguson lacked the necessary reasonable suspicion before stopping his car on I-75 in March 2012. (*Id.*) Plaintiff alleges that based on Defendant Ferguson's "established history of submit[ing] perjured testimony" to courts, it is likely that he did so in this matter as well. (*Id.* at Pg ID 892.)

Defendants contend that Plaintiff's civil rights have not been violated. Defendant Ferguson argues that he had probable cause and reasonable suspicion for the vehicle stop, search warrant executed on July 31st, and September 6th arrest based in part on the work of his confidential informants. Defendant Ferguson seeks summary judgment and/or dismissal of all claims against him pursuant to Federal Rules of Civil Procedure 56 and 12(b)(6). (ECF No. 46 at Pg ID 278.)

## II. Summary Judgment Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material

8

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials."

9

Fed. R. Civ. P. 56(c)(1). The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

## III. Applicable Law and Analysis

### A. Qualified Immunity

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Burley v. Gagacki*, 729 F.3d 610, 619 (6th Cir. 2013). "Qualified immunity protects government officials performing discretionary functions unless their conduct violates a clearly established statutory or constitutional right of which a reasonable person in the official's position would have known." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006). To defeat the defense of qualified immunity, plaintiff must satisfy a two-pronged test. *See Pearson v. Callahan*, 555 U.S. 223 (2009).

To satisfy the first prong at the summary-judgment stage, the plaintiff must show that "based upon the applicable law, the facts viewed in the light most favorable to the plaintiff[ ] show that a constitutional violation has occurred." *Sample v. Bailey*, 409 F.3d 689, 695 (6th Cir. 2005); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second prong requires the plaintiff to show that "the

violation involved a clearly established constitutional right of which a reasonable person would have known." *Sample*, 409 F.3d at 696; *see also Saucier*, 533 U.S. at 201. The court may address these prongs in any order, and if the plaintiff cannot make both showings, the state actor is entitled to qualified immunity. *Pearson*, 555 U.S. at 236.

For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202 (internal quotation marks omitted). "This inquiry . . . must be undertaken in light of the specific context of the case, not as a broad general proposition[.]" *Id.* at 201. The court "need not, of course, find a case in which 'the very action in question has previously been held unlawful,' but, 'in the light of pre-existing law, the unlawfulness must be apparent.' " *Comstock v. McCrary*, 273 F.3d 693, 711 (6th Cir. 2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (alterations omitted). " '[T]here need not be a case with the exact same fact pattern or even 'fundamentally similar' or 'materially similar' facts; rather, the question is whether the defendants had 'fair warning' that their actions were unconstitutional.' " *Cummings v. City of Akron*, 418 F.3d 676, 687 (6th Cir. 2005) (quoting *Hope v. Pelzner*, 536 U.S. 730, 741 (2002)). "In inquiring whether a constitutional right is clearly established, [the court] must look first to decisions of the Supreme Court, then to decisions of th[e

11

Sixth Circuit] and other courts within our circuit, and finally to decisions of other circuits." *Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002), cert. denied sub nom. *Dickhaus v. Champion*, 544 U.S. 975 (2005).

"If the legal question of immunity is completely dependent on which view of the facts the jury accepts, the district court should not grant summary judgment on the issue." *Rodriguez v. Passinault*, 637 F.3d 675 (6th Cir. 2011) (citing *Brandenburg v. Cureton*, 882 F.2d 211, 215-16 (6th Cir. 1989)); *see also Sova v. City of Mt. Pleasant*, 142 F.3d 898, 903 (6th Cir. 1998) ("[S]ummary judgment is inappropriate where there are contentious factual disputes over the reasonableness of the use of deadly force.")).

### B. Analysis

Defendant Ferguson argues that he is entitled to qualified immunity here because Plaintiff has failed to satisfy the first prong of the standard—that a constitutional violation has occurred based on the facts. (ECF No. 46 at Pg ID 283.) Plaintiff disagrees, contending that Defendant Ferguson had no probable cause for the July 31st search or for the September 6th arrest. (ECF No. 60 at Pg ID 918.) Plaintiff also argues that Defendant Ferguson did not have reasonable suspicion to stop the van in March 2012.

In response, Defendant Ferguson provides facts that demonstrate there was reasonable suspicion or probable cause for all three events. When Plaintiff was

stopped on I-75, Defendant Ferguson stated he had reasonable suspicion based on CI #1 telling him that Plaintiff had purchased drugs over the phone while officers were conducting surveillance. (ECF No. 46 at Pg ID 269-70.) Plaintiff argues that because this information is missing in Defendant Ferguson's case report, Defendant Ferguson had no basis for stopping the vehicle, and detaining and searching Plaintiff. (ECF No. 60 at Pg ID 912.) In his opposition brief, Plaintiff does not counter the facts as presented by Defendant. Rather, he casts doubt of the accuracy of Defendant Ferguson's evidence based on the omission in the case report. (*Id.*)

Next, Plaintiff argues that Defendant Ferguson lacked the probable cause for the July 31st search of his home because "there is a question of fact on whether these controlled buys even occurred." (*Id.* at Pg ID 915.) In support of this assertion, Plaintiff provides his own testimony where he stated that "he did not sell drugs to anyone, ever, and he certainly did not sell drugs to anyone in 2012." (ECF No. 60 at Pg ID 915.)

Plaintiff makes a similar argument in challenging Defendant Ferguson's probable cause for his September 6th arrest. Plaintiff argues there is a question of fact as to whether Defendant Ferguson had probable cause to search Plaintiff's home because the basis for probable cause was the alleged controlled buys that

took place previously. (*Id.* at Pg ID 917.) "All of these alleged buys were expressly denied by Plaintiff." (*Id.*)

Defendant Ferguson's assertion that reasonable suspicion existed for the I-75 stop and probable cause is supported by the deposition testimony of CI #1. Support for Defendant Ferguson's allegation that he had probable cause for the July 31st and September 6th events are supported by the deposition testimony of CI #1, CI #2, and Officer Ludd as well as case reports. (ECF No. 80; *see also* ECF No. 46-22.) Other officers such as Officers Doty and Pankey do not recall the specific events, but testified they have no reason to believe that Defendant Ferguson was inaccurate in his case reports. (*See* ECF Nos. 46-17 at Pg ID 590-91; 46-20 at Pg ID 656-57.)

Plaintiff fails to provide any evidence countering the testimonies of Defendant Ferguson, the two confidential informants, and other officers who were deposed in this matter other than Plaintiff's own testimony. However, this Court is "not required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question." *Brooks v. Am. Broadcasting Cos., Inc.*, 999 F.2d 167, 172 (6th Cir. 1993).

Thus Plaintiff does not present sufficient evidence to suggest that Defendant Ferguson lacked reasonable suspicion for the March 2012 traffic stop, July 31st

search of Plaintiff's home, and September 6th arrest.  As such, the Court is granting summary judgment to Defendant Ferguson.[5]

IV.  Conclusion

For the reasons stated, the Court concludes that Defendant Ferguson has demonstrated there is no genuine issue of material fact precluding summary judgment.  Defendant Ferguson is entitled to qualified immunity because Plaintiff failed to establish that a constitutional violation has occurred.

Accordingly,

**IT IS ORDERED** that Defendant Ferguson's motion for summary judgment (ECF No. 46) is **GRANTED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: March 29, 2017

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, March 29, 2017, by electronic and/or U.S. First Class mail.

s/ Richard Loury
Case Manager

---

[5] In light of the qualified immunity defense, the Court declines to opine on whether *Heck v. Humphrey*, 512 U.S. 477 (1994) applies to Plaintiff's guilty plea.